IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CASE NO.: 13-58(ADC) |
| | * | |
|     Plaintiff | * | |
| | * | |
| vs | * | |
| | * | |
| BRETT JONES-THEOPHILIOUS, | * | |
| | * | |
|     Defendant | * | January 15, 2013 |
| | * | Hato Rey, Puerto Rico |

**PRELIMINARY/BAIL HEARING**

HELD BEFORE THE HONORABLE MARCOS E. LÓPEZ
UNITED STATES MAGISTRATE JUDGE
FEDERAL BUILDING, HATO REY, PUERTO RICO


APPEARANCES:

FOR PLAINTIFF        :        Ernesto López-Soltero, Esq.

FOR DEFENDANT        :        Mr. Brett Jones-Theophilious
                              *(pro se)*.

COURT REPORTER       :        FTR


CERTIFIED TRANSCRIBERS, INC.
1075 Carr. Plaza Suchville #302
Bayamón, Puerto Rico 00959
Tel. # (787)783-6623;(787)617-9487
E-mail: crystalinchaustegui@hotmail.com

1                    P R O C E E D I N G S

2                                             (9:37 A.M.)

3            THE COURT:   Let's call the first case.

4            COURTROOM DEPUTY:   United States of America versus

5    Brett Jones, Criminal Case Number 12-1627(M), Preliminary

6    Examination Bail Hearing.

7            On behalf of the Government, AUSA Ernesto López-

8    Soltero. On behalf of Defendant, *pro se*, Brett Jones, and

9    standby Counsel FPD Lydia Marrero.

10           MR. LÓPEZ-SOLTERO:   Good morning, Your Honor. The

11   Government is ready to proceed.

12           THE COURT:   Good morning. Sir, could you please...

13   I just... well, first of all, I think that the last time you

14   indicated to me, sir, that you prefer not to be called Mr.

15   Jones. That you prefer to be called Brett. Is that right?

16           DEFENDANT:   Well, my name has never been Mr. Jones.

17   I've always been Brett Son of Isaac.

18           THE COURT:   Alright. So, you would like... how do

19   you like to be called, sir, Brett?

20           DEFENDANT:   Brett.

21           THE COURT:   Alright, so, I'll call you as you like

22   to be... I'll address as you would like to be addressed.

23           Brett, I think that last time when you were here I

24   advised you that it was in your best interest to be

25   represented by Counsel, and you told me that you were going to

1   think about it.

2            Even though originally you had told that you wish to

3   represent yourself, that, during this period of time, you were

4   going to think about that decision.

5            Have you reconsidered your decision as to whether

6   you would like to be represented by Counsel? Because, if you

7   would like to be represented by Counsel, that is something

8   that can be worked out in terms of providing you an attorney

9   to represent you in these proceedings.

10           DEFENDANT:   There are a couple of things that need

11   to be stated along that line. First, I assured this particular

12   body (phonetic) that I would give that some though, and I

13   have.

14           I am here in Special Appearance. I'm not

15   representing anyone. I'm sorry, but there is an issue with me

16   and certain words that I choose not to use.

17           I am not...because there is a lot of talk going

18   around these last couple of days... a sovereign American,

19   never claimed to be, never will be.

20           So, we, hopefully, can get that out of the air now

21   so that I will not be treated as individuals who come before

22   courts, and claim that they're sovereign, and the Court has no

23   jurisdiction or authority.

24           I am fully versed in matters of law, whether

25   criminal or civil. I understand the procedures of the Court. I

4

1   also understand case law, and how it is used in several

2   different cases.

3            I understand the Collective Entity Theory. I

4   understand several things that have been ruled by the Court,

5   such as Bond versus the United States, where the Supreme Court

6   stated that the Federal jurisdiction cannot supersede State

7   jurisdiction.

8            So, I believe that I am well-versed and completely

9   capable of speaking on behalf of the Defendant, and speaking

10  on behalf of myself.

11           THE COURT:   So, the short answer to my question is,

12  sir, is that you do not want to be represented by Counsel?

13           DEFENDANT:   That is correct.

14           THE COURT:   Do you understand that it is in your

15  best interest to be advised by somebody who is educated and

16  versed in the law?

17           DEFENDANT:   I consider myself to be that

18  individual.

19           THE COURT:   Alright, very well. Well, sir, please

20  have a seat at Counsel's table. And, at this moment, we're

21  going to proceed with the Preliminary and Bail Hearing.

22           But, please understand, sir, that you will have to

23  follow the rules of procedures for these Federal proceedings.

24  Alright?

25           DEFENDANT:   That is correct.

5

1          THE COURT:   So, that Minutes shall reflect that the

2   Defendant has once again indicated that he does not wish to be

3   represented by Counsel.

4          Therefore, in terms of Discovery, the Government

5   shall have made the necessary arrangements to produce a

6   Discovery, and make the Discovery available to the Defendant,

7   either at MDC or, depending on what happens at the Bail

8   Hearing, to the Defendant himself, if conditions of release

9   are granted.

10          Alright, so, being that the case, sir, please have a

11   seat.

12          DEFENDANT:   I just received this maybe two minutes

13   before you walked in, and I haven't had a chance to review it.

14          THE COURT:   I think that's a fair point that you're

15   making. I'll give you an opportunity to be able to read the

16   Pre-Trial Services Report.

17          So, why don't you have a seat at Counsel's table,

18   and that way I'll give an opportunity before we begin with the

19   proceedings so that you can fully read the Pre-Trial Services

20   Report. Alright?

21          I know we also have a Change of Plea Hearing set for

22   9:30 A.M. Are we ready for that Change of Plea Hearing in

23   terms of the Plea Agreement or do the parties need a little

24   more time?

25          UNIDENTIFIED SPEAKER:   Can we have five minutes,

1   Your Honor?

2           THE COURT:   Okay, that's fine. I'll... so what I'm

3   going to do is I'm going to take a five minute recess so that

4   way Brett can read the Pre-Trial Services Report.

5           And, if you need to work out anything on the Plea

6   Agreement, then we'll start with whichever of the two hearings

7   is ready first. Alright? So, a five minute recess.

8                           (Off the record.)

9                            (Brief recess.)

10                          (Back on the record.)

11          THE COURT:   Let's proceed with the Preliminary and

12  Bail Hearing in Case 12-1627. AUSA López, you may call your

13  witnesses. How many witnesses do you have?

14          MR. LOPEZ-SOLTERO:   One, Your Honor.

15          THE COURT:   Alright, you may proceed.

16          MR. LOPEZ-SOLTERO:   Thank you, Your Honor. The

17  Government calls Special Agent Donny Albino.

18          THE COURT:   Just for clarity for the record, Brett,

19  are you fluent in the English language?

20          DEFENDANT:   I'm fluent in English, not legalese,

21  but in English.

22          THE COURT:   Excuse me?

23          DEFENDANT:   Not legalese, but English.

24          THE COURT:   Well, sir, as I said, that's one of the

25  reasons why it's useful for you to have an attorney. Because,

7

 1  if they're legal terms, if they're technical, legal terms, an

 2  attorney can certainly help you to explain technical, legal

 3  terms.

 4          Would you like to have the services of an attorney

 5  to explain the legal terms?

 6          DEFENDANT:   As standby Counsel.

 7          THE COURT:   Well, as I said, would you like an

 8  attorney to represent you, "yes" or "no"?

 9          DEFENDANT:   The answer is no.

10          THE COURT:   Alright, well, then the record shall

11  reflect that the Defendant is fluent in the English language,

12  and, therefore, does not need the services of an Interpreter.

13  Let's place the witness under oath.

14          COURTROOM DEPUTY:   Can you please stand and raise

15  your right hand. Do you solemnly swear that all the testimony

16  that you're about to give in the case now before the Court

17  will be the truth, the whole truth, and nothing but the truth,

18  so help you God?

19          WITNESS:   Yes.

20          THE COURT:   Sir, could you please state your full

21  name for the record?

22          WITNESS:   Yes, my name is Special Agent Donny

23  Albino, from Homeland Security Investigations.

**DIRECT EXAMINATION**

24

25  BY MR. LÓPEZ-SOLTERO:

1  Q.   And, sir, good morning.

2  A.   Good morning, sir.

3  Q.   Can you tell the Court, in brief terms, what are your

4  duties as a Special Agent for Homeland Investigations?

5  A.   Yeah, as a Special Agent, I perform different duties, but

6  one of them is to enforce Title 18, U.S.C. 2250, which is the

7  one we are here for today.

8  Q.   Which act is that?

9  A.   That's the act that says that people need to register...

10  sex offenders...

11  Q.   Sex offenders need to register with whom?

12  A.   With any states that they go or any jurisdiction once

13  they move.

14  Q.   If they move around the nation, they have to register?

15  A.   That is correct. That also includes the territories of

16  the United States, which is Puerto Rico.

17  Q.   And, you deal with that act as part of your duties as a

18  Special Agent?

19  A.   Correct.

20  Q.   Sir, do you remember, on December 28, 2012, swearing to

21  an Affidavit for a Criminal Complaint?

22  A.   Yes, that's correct, sir.

23  Q.   Before the Magistrate Judge here?

24  A.   Yes, sir.

25  Q.   Sir, do you remember the context of that Affidavit?

9

1  A.   I do.

2  Q.   Sir, do you stand by the contents of that Affidavit?

3  A.   Correct. It stated that, on or about December 27th, we

4  encountered Mr. Brett, known as "Son of Isaac", and he was not

5  registered with the Puerto Rico authorities for being a sex

6  offender.

7  Q.   Okay, now, as part of your investigation, were you able

8  to determine where was he convicted of a sex offense?

9  A.   Correct, we have several documents that show Arizona, as

10  well as New York. In addition, an active Arrest Warrant in the

11  State of New Mexico for the same charges, and Puerto Rico, of

12  course, with the new charges today.

13  Q.   When you mention "New Mexico" and "the same charges", are

14  those sex offense charges or failure to register?

15  A.   Failure to register, sir.

16  Q.   Now, where was Mr. Brett detained?

17  A.   He was detained in Lares, Puerto Rico.

18  Q.   Do you remember where exactly?

19  A.   Correct, yeah, that's *Barrio Castañer*, Road 431.

20  Q.   Was he arrested in a house, in a business?

21  A.   In his residence.

22  Q.   In his residence?

23  A.   In his apartment.

24  Q.   He was living there?

25  A.   Correct.

1   Q.   And, how do you know he was living there?

2   A.   Actually, we knew he was living there because, when we

3   received the information about Mr. Brett... you want me to

4   start all over of how we encountered the subject?

5   Q.   Yes.

6   A.   Okay, on or about December 21st, Mr. Brett showed at the

7   Puerto Rico Department of Transportation requesting an I.D., a

8   Puerto Rico I.D. identification.

9        And, when the people of the Department of

10  Transportation requested Mr. Brett some source of

11  identification, such as Social Security number and other

12  documents, he provided some documents that he considered are

13  legal to the Department of Transportation, but they didn't

14  accept it because it's not the documents that most likely any

15  state accepts for issuing I.D.'s.

16       When that happened, according to what one of the

17  witnesses over there, in the Department of Transportation,

18  stated is that they had like a little discussion related to

19  the I.D. issue, and they eventually contacted the State

20  Police.

21       The State Police contacted us to find out who was

22  Mr. Brett. When we start running several databases, we

23  encountered that, according to the databases, his name is Mr.

24  Brett Jones. There is his photo and the registration in

25  other... in the States as a sex offender.

1        Eventually, we started looking in the NCIC System,

2   which is handled by the FBI, and we encountered that Mr. Brett

3   has an active Arrest Warrant in New Mexico.

4        Furthermore, we also did our research in the State

5   level, and, after reaching all the thirteen regions (phonetic)

6   in Puerto Rico through the main department, Puerto Rico Police

7   Department, in San Juan, that they have a main office there,

8   we encountered that he was not registered in Puerto Rico.

9        In addition, we went further, and we started

10  interviewing several witnesses, including the person that

11  rented Mr. Jones a residence. And, according to the person

12  that is renting, stated that Mr. Brett had been living in

13  Puerto Rico since July, most likely since July of 2012, plenty

14  of time to...

15  Q.   How were you able to determine that?

16  A.   There's a contract that the owner of the residence gave

17  us, which stated... and it's singed by him... saying that

18  he's, since July of 2012, been living in Puerto Rico.

19  Q.   So, it stated "July, 2012"?

20  A.   Correct.

21  Q.   Now, sir...

22  A.   And, finally... just to... real quick... and, once we

23  clarified all that, then we went and arrested Mr. Brett for

24  the violation.

25  Q.   During the arrest, did he make any statement?

CERTIFIED TRANSCRIBERS, INC.
1075 Carr. 2 Cond. Plaza Suchville #302
Bayamón, Puerto Rico 00959
Tel. # (787) 783−6623; (787) 617−9487

1   A.   No, he was very gentle with us and respectful at all

2   times.

3   Q.   I'm going to show you a document. It's in Spanish.

4           MR. LÓPEZ-SOLTERO:   Can I approach the Witness?

5           THE COURT:   Yes.

6                         **DIRECT EXAMINATION**

7   BY MR. LÓPEZ-SOLTERO:

8   Q.   I'm showing you a document that you brought to me this

9   morning.

10   A.   Correct.

11   Q.   Can you identify that document, sir?

12   A.   That's correct, sir.

13   Q.   Is that an official document?

14   A.   That is our official document for the Puerto Rico Police

15   Department.

16   Q.   And, its got the seal of the Police of Puerto Rico?

17   A.   That is correct, sir.

18   Q.   And, what is the date of that document?

19   A.   The date says "January 4, 2012".

20   Q.   January 4, 2012.

21           MR. LÓPEZ-SOLTERO:   We ask the Court to mark that

22   document as Exhibit 1?

23           THE COURT:   Any objection?

24           DEFENDANT:   Only the objection as that being a

25   surprise document. The may have had it seen the 4th. I

13

1   should've had it shortly thereafter. I've never seen that

2   document before.

3           THE COURT:   Well, on those grounds, overruled.

4   Admitted as Exhibit 1.

5       (Whereupon,

6           the above-mentioned document was admitted into

7   evidence as Government Exhibit 1.)

8   BY MR. LÓPEZ-SOLTERO:

9   Q.   Can you tell the Court what that document is?

10  A.   Yes, this is information of... a Sex Offender Registry

11  information document.

12  Q.   Okay, regarding who?

13  A.   Regarding Mr. Brett.

14  Q.   Okay, and...

15          DEFENDANT:   I object to that. That is regarding

16  Brett Jones-Theophilious. It is not regarding Brett Son of

17  Isaac.

18          THE COURT:   Sir, you are free to conduct Cross

19  Examination, and confront the witness as to any

20  inconsistencies, if you believe that there are any as to his

21  testimony. And, as to that regard, you'll be given that

22  opportunity.

23          And, I will also take advantage of this opportunity

24  to remind you that, throughout this... both the Preliminary

25  and Bail Hearing... you do have the right to remain silent,

1   and anything that you say can and may be used against you by

2   the Government of the United States.

3            Very well, you may go ahead and answer that

4   question.

5            MR. LÓPEZ-SOLTERO:   Thank you, Your Honor.

6   A.   Yes.

7   BY MR. LÓPEZ-SOLTERO:

8   Q.   Now, that document has a part in red. Can you tell the

9   Court what that says?

10  A.   Okay, it says, "At the moment of looking in our system,

11  Mr. ...

12  Q.   That's January 4th?

13  A.   Oh, I'm sorry, yeah, correct. Sorry. I thought you were

14  asking me the...

15  Q.   No, no, no the red part. But, when they say "At the time

16  we were looking at our records...", that means January 4th?

17  A.   Yes, correct, correct, yes.

18  Q.   Go ahead. What does it say?

19  A.   Well, yeah, it says, "At the moment of looking in our

20  system, Mr. Jones does not show as a registered sex offender

21  in Puerto Rico.".

22  Q.   So, as of January 4th, Mr. Brett hadn't registered as a

23  sex offender, in Puerto Rico, yet?

24  A.   That is correct, sir.

25            LÓPEZ-SOLTERO:   That would be all, Your Honor.

1          THE COURT:   Before we allow for Cross Examination,

2  sir, throughout this testimony, I've heard you use the term

3  "Mr. Brett". Are you using "Brett" as a last name or as a

4  first name?

5  A.   Well, I'm actually using Brett as respect for the Court,

6  that that's the name that he wanted to be called. That's why

7  I'm calling him "Mr. Brett".

8          THE COURT:   Well, but I'm... but, for purposes of

9  clarity of your testimony...

10 A.   Of Brett Jones.

11         THE COURT:   ... we need to have the full name of

12 the individual that you have indicated that you detained on

13 the 27th of December of the year 2012. What would be the full

14 name?

15 A.   Okay, my apologies. Mr. Brett Jones-Theophilious.

16         THE COURT:   Okay. And, sir, do you see this person

17 in this Courtroom here today?

18 A.   That is correct, sir.

19         THE COURT:   If you see him in this Court, can you

20 point where he is?

21 A.   He's on my right side, at the Defense table.

22         THE COURT:   Okay.

23         DEFENDANT:   I thought that that would have been the

24 job for the prosecution, Your Honor.

25         THE COURT:   Your Witness for Cross Examination,

1   sir. You may please stand right behind the podium.

2          DEFENDANT:   I'm shackled, so this will do.

3          THE COURT:   Sir, please, stand behind the podium

4   for purposes of conducting the Cross Examination.

5          DEFENDANT:   I haven't had any medication in the

6   last four days. My kidneys are causing me a lot of problems. I

7   haven't had any medical attention for them.

8          Please, understand the amount of pain that I'm in

9   right now. It is the same amount of pain I've been in for a

10  long time. I've already talked to the officers about this.

11         THE COURT:   Well, if you don't feel in conditions

12  to conduct the Cross Examination, we can postpone this for

13  another day. Would you like this hearing to be postponed?

14         DEFENDANT:   Standing is the issue.

15         THE COURT:   Alright, fair enough.

16         DEFENDANT:   Sitting is not a problem.

17         THE COURT:   Alright, if you're sitting, then you

18  are not in pain, sir?

19         DEFENDANT:   I'm in pain, but I can handle Cross

20  Examination while sitting down.

21         THE COURT:   Alright, would you...

22         DEFENDANT:   But, I am shackled. It allows me to be

23  able to move through this paperwork, and still do the Cross

24  Examination without any hindrance.

25         THE COURT:   Would you like this hearing to be

1  conducted another day?

2         DEFENDANT:   No waiving of anytime will I ever

3  submit to.

4         THE COURT:   Alright, fair enough. Sir, taking into

5  account that the Defendant has indicated that, due to his

6  health conditions, he feels in less pain, I will allow you to

7  then remain sitting down for Cross Examination.

8         You may proceed, sir. Sir, have you understood the

9  warnings that I have given you, that you have the right to

10 remain silent? Do you understand that?

11        DEFENDANT:   If I'm sitting here as a Defendant

12 then, yes, I completely understand that. But, as I stated

13 before, I am here in Special Appearance, not General

14 Appearance.

15        THE COURT:   Sir, do you understand that nobody can

16 force you to testify?

17        DEFENDANT:   I am never going to be testifying.

18        THE COURT:   Do you understand, sir, that you are

19 not required to testify? Do you understand that?

20        DEFENDANT:   I mean you must understand that I've

21 answered your question when I say that I will never testify.

22 That should indicate that I clearly understand.

23        THE COURT:   Sir, do you understand that anything

24 that you say the Government can use against you?

25        DEFENDANT:   Cannot, because I am not here. I'm here

1   in Special Appearance representing the Defendant. I've made

2   that quite clear on several occasions.

3          THE COURT:   Well, I'm warning you and I'm advising

4   you that the Government can and may use any admission or

5   statement that you say against you in this case.

6          DEFENDANT:   Your warning is noted.

7          THE COURT:   Go ahead ask your questions.

8                          **CROSS EXAMINATION**

9   BY DEFENDANT:

10  Q.   Could you please state for me again your name, if you do

11  not mind, and your position with the Homeland Security

12  Investigations Department?

13  A.   Yes, sir. My name is Special Agent Donny Albino, assigned

14  to the Homeland Security Investigations.

15  Q.   Okay, Mr. Albino, apparently you have brought forth an

16  Affidavit...

17         DEFENDANT:   Excuse me, there is a question I need

18  to ask the Court. One moment.

19                          (PAUSE)

20         DEFENDANT:   Has the Court received the presentment

21  rebutting the Affidavit that I sent on the 4th of January?

22         THE COURT:   I'm not aware of any document, aside

23  from the Criminal Complaint that has been found in this case.

24  Ana, do you we have anything on record?

25         COURTROOM DEPUTY:   No, sir.

 1              THE COURT:   No. So...

 2              DEFENDANT:   Well, according to the Supreme Court, a

 3  rebutted Affidavit stands as truth in law. I sent a rebuttal

 4  of the Affidavit on January 4th.

 5              Because I am not allowed to copies or access to any

 6  legal work, several individuals lent me paper, stamps, and

 7  some writing utensil, and I did send a rebuttal.

 8              I will make sure that another one is done before the

 9  end of this week...

10              THE COURT:   Duly noted.

11              DEFENDANT:   ... and so that I get that to the

12  Court.

13              THE COURT:   Duly noted.

14  BY DEFENDANT:

15  Q.   The charge here that you... I'm sorry, back to you.

16  A.   Yes, sir.

17  Q.   The charge here that you indicated was Title 18, Code

18  2250?

19  A.   That's correct, sir.

20  Q.   Verbatim, can you please indicate what are the

21  requirements under that particular code?

22  A.   Oh, yes, the person needs to be a sex offender...

23              LÓPEZ-SOLTERO:   Objection, Your Honor. The Court

24  knows...

25              THE COURT:   Sustained.

1           DEFENDANT:   He says that he is an expert, Your

2    Honor, in the field that he works in. That was the first

3    question I asked.

4           THE COURT:   Sir, you're entitled to ask factual

5    questions, not legal questions. Go ahead, next question.

6    BY DEFENDANT:

7    Q.    Under the Affidavit that you provided... and it mentions

8    the Code... Civil Section 182250, you mentioned that you had

9    no indication as to the state where the offenses alleged took

10   place originally.

11   A.    Correcting. It's not Civil. It's Criminal, first of all.

12   The charges are Criminal, not Civil. Let me clarify that

13   first. Okay, can you repeat again the question, sir?

14   Q.    You indicated, in your Affidavit, that you have no

15   knowledge as to where the original offense took place. That

16   your knowledge was New York State. Is that correct?

17   A.    According to the document that you see in there, the

18   registration appears to be in New York. Eventually, we found

19   out that it was in Arizona, and eventually he was arrested in

20   New York. That's what we got.

21   Q.    Okay.

22   A.    Within the course of the investigation.

23   Q.    When you gave testimony earlier, you stated that it was

24   "New York". I actually took note of that, when you stated

25   that.

1  A.   Actually I said "Arizona" and "New York". I stated both

2  places, and it can be reviewed.

3           DEFENDANT:   Is it possible that we can have that

4  part of the record re-read, Your Honor?

5           THE COURT:   I'll evaluate any potential

6  inconsistences between the Direct and Cross Examination for

7  purposes of reaching my Probable Cause determination. You may

8  proceed.

9           DEFENDANT:   He signed an Affidavit to these effects

10  that I'm mentioning to you.

11  BY DEFENDANT:

12  Q.   When did you become aware that the arresting state

13  originally was Arizona?

14  A.   During the course of the investigation.

15  Q.   Okay, approximately?

16  A.   To give an answer to you... I can't give you an exact

17  date. I have been dealing with the case the whole week. I

18  cannot give you an exact date.

19  Q.   Was it during the arrest?

20  A.   Actually, during the arrest, we confirmed with New Mexico

21  that you (sic) have an Arrest Warrant for the same offenses

22  that we are... or that the USA is presenting...

23  Q.   Yes, but that's not the question that was asked. I need

24  the answer to the question.

25  A.   Okay, but, in order to get you there, I need to...

1  Q.   No, just please answer the question directly.

2  A.   Okay, can you repeat it again, sir?

3  Q.   You indicated in your report... let's... so that we don't

4  have a back and forth here, because I'm not looking for that,

5  let's move on to another question.

6  A.   Okay.

7  Q.   You mentioned that you received information from the

8  Department of Motor Vehicles through the State Police of

9  Puerto Rico, "yes" or "no"?

10 A.   That is correct.

11 Q.   Okay, the information that you received indicated that,

12 if I...

13         DEFENDANT:   One moment while he reviews.

14                        (PAUSE)

15         DEFENDANT:   Well, as a matter of fact, I'm very

16 familiar with both documents. The apostle (phonetic) from the

17 Secretary for the State of Puerto Rico that were Affidavits.

18         LÓPEZ-SOLTERO:   Your Honor, we don't know if the

19 Defendant is going to try to introduce those documents.

20         THE COURT:   No, we'll see. I don't now yet either.

21         DEFENDANT:   No, the official ones are at home,

22 locked away.

23         THE COURT:   Alright, you may ask your question.

24         DEFENDANT:   I'm just bringing this to the

25 gentleman's attention as to the document that was presented to

1  him at the time by the State Police.

2  BY DEFENDANT:

3  Q.   When you received those documents...

4  A.   Correction. It was not the State Police, the Department

5  of Transportation.

6  Q.   The Department of Transportation who contacted you

7  through the State Police?

8  A.   That's correct.

9  Q.   Okay. Do the documents I just handed you appear to be not

10  exact, but copies of what you received from the Department of

11  Transportation?

12  A.   Appears to be.

13          DEFENDANT:   What he has in his hand, Your Honor,

14  is...

15          THE COURT:   No, don't. You don't... it's for the

16  Witness to testify as to what, if anything, he has in his

17  hands.

18  BY DEFENDANT:

19  Q.   Could you please explain to the Court...

20          THE COURT:   Now, if these... these documents, are

21  they in the Spanish language or in the English language?

22          DEFENDANT:   They are in the English and Spanish.

23          THE COURT:   They are in the English language.

24          DEFENDANT:   The apostle from the Secretary of State

25  is in both English and Spanish.

1            MR. LÓPEZ-SOLTERO:   Again, Your Honor...

2            THE COURT:   Do you have any objection that these

3    documents be marked as an Exhibit?

4            LÓPEZ-SOLTERO:   Of course, Your Honor. Those

5    documents are not official. I don't know where they come from.

6            THE COURT:   Well, let's see what the witness says

7    about those documents. Sir, do you recognize those documents?

8    A.   Appears to be the ones I received from the Department of

9    Transportation, copies of it.

10           DEFENDANT:   They are not being introduced as

11   Exhibits, only to documents, certain information that

12   contradicts the Affidavit.

13           THE COURT:   Well, if they're not introduced as

14   Exhibits, then let's remove them from the Witness' table, and

15   you may ask your next question. Go ahead.

16   BY DEFENDANT:

17   Q.   Within the documents you received from the State Police,

18   did you maintain a copy of those documents?

19   A.   That is correct.

20   Q.   Did you bring the file with you here today?

21   A.   Oh, yes, it's part of the Discovery that I pre-matured

22   (sic), that the AUSA office will provide to you.

23   Q.   So, the Prosecuting Attorney has a copy of these

24   documents in the file?

25   A.   On the table, sir.

1  Q.   Thank you. Within the apostle for the Secretary of State,

2  did you, by any chance, come across an address for Brett Son

3  of Isaac?

4        LÓPEZ-SOLTERO:   Objection, Your Honor. He's

5  getting into the contents of the document.

6        DEFENDANT:   But, he's already indicated that he's

7  given Counsel a copy of the very same documents.

8        THE COURT:   Well, I understand that there is some

9  hearsay involved here. But, in light of the fact that it's a

10 Preliminary Hearing, I will allow some leeway, and I will

11 allow the Defendant to ask this question in Cross Examination.

12 So, go ahead. Question stands. Go ahead and answer the

13 question.

14 BY DEFENDANT:

15 Q.   Did you happen to notice the address that was located

16 within the document?

17 A.   Yes, somewhere it might say something about Brett Son of

18 Isaac, correct.

19 Q.   Yes, but the address for Puerto Rico, Lares?

20 A.   Yeah, I saw it in there.

21 Q.   Okay, in your Affidavit, you mentioned that there was an

22 attempt to evade. Am I correct?

23 A.   That's what it says, yes. That's what it is.

24 Q.   How did you define, within your Affidavit, the attempt to

25 evade?

1   A.    Well, it can be defined in too many ways. But, since July

2   until now, plenty of time to register. I mean I don't know if

3   that can be considered trying to evade registry.

4   Q.    Well, you were the one who filed the Complaint. You did

5   the investigation.

6   A.    Right, and I'm answering you what you asked me.

7   Q.    Well, no, no, no, you...

8   A.    And, that's my final answer.

9   Q.    Okay. You mentioned... and I will state again... that

10  there was an attempt to evade.

11  A.    Correct, and I repeat to you...

12  Q.    ... and, according to what you just stated, the attempt

13  to evade was as a result of not registering.

14  A.    That's correct.

15  Q.    Did you happen to contact the Castañer Police Department

16  during your investigation?

17  A.    Oh, yes, I did, I did. I interviewed the Sergeant that

18  actually received you at the facilities.

19  Q.    Received me?

20  A.    Yeah, the day that you put a Complaint on something like

21  that, at the police department. You showed up that day over

22  there complaining about a police officer that stopped you or

23  something happened in a accident. Yeah, I interviewed them,

24  actually three witnesses.

25  Q.    One moment. Are you sure we are speaking about the same

1  police department?

2  A.    Correct, the one in Castañer, the only one Lares, down in

3  the Castañer.

4  Q.    Okay, however, let's... I'm thinking if there's a

5  misunderstanding of Castañer Police Department and the Lares

6  Police Department.

7  A.    No, actually I went to Castañer Police Department, the

8  one... the small police station in Castañer, Lares. It's the

9  only one in the small city.

10 Q.    Okay, and your indicating that the Sergeant...

11 A.    Actually, I interviewed three people there.

12 Q.    And, they all stated that I appeared at that location?

13 A.    Well, they said that you were involved some kind of an

14 accident, something like that. That you went to the facilities

15 complaining that because they didn't talked to you in Spanish

16 or something like that... I'm sorry... that they didn't talk

17 to you in English.

18        That you were kind of feeling uncomfortable because

19 of the English language, no Spanish knowledge, and all that.

20 Q.    Okay, well, thank you for...

21 A.    And, but, according to...

22 Q.    Thank you, thank you, for that information.

23 A.    Oh, you're welcome, sir.

24 Q.    Let's get back to the Cross Examination, and we'll come

25 across the Castañer Police Department in just a moment.

1    A.    Okay, yes, sir.

2    Q.    Did you have firsthand knowledge of the events that

3    you've listed in your Affidavit?

4    A.    Yes, that's why I presented the Affidavit.

5    Q.    One second, one second. Just, for right now, "yes" or

6    "no". I would appreciate that.

7    A.    Oh, yes, yes.

8    Q.    How did the Defendant come across your Agency's

9    attention? You said that it was the Department of Motor

10   Vehicles, were Brett Son of Isaac was seeking to acquire

11   identification, and he provided several documentation for

12   identification.

13         They contacted the State Police. How did your

14   offices get involved when it would normally be the United

15   States Marshals who would handle such a situation?

16   A.    To be honest with you, sometimes we receive calls from

17   the State Police for different things. So, in this one, they

18   called us. That's all I can tell.

19   Q.    Thank you. Why not, since you had the address both in New

20   Mexico and Puerto Rico, send some sort of notification or call

21   to let the individual whom you're investigating know that

22   there's an investigation?

23         LÓPEZ-SOLTERO:   Your Honor, I didn't understand the

24   question.

25   A.    Yeah, can you rephrase that because I'm lost?

1          DEFENDANT:    The Supreme Court...

2          THE COURT:    It's irrelevant. Next question.

3          DEFENDANT:    The Supreme Court, in several cases,

4  had made it quite clear that the right for an individual to be

5  notified prior to being subjected to any deprivation goes back

6  to medieval times, and it is a due process right. So, I can't

7  see how a right could be irrelevant.

8          THE COURT:    Noted. Overruled. Next question, sir.

9  The issue before the Court is not whether you had the right to

10 be notified of an investigation.

11         The issue is whether there is Probable Cause that

12 you failed to register as a sex offender here, in Puerto Rico.

13         DEFENDANT:    The issue...

14         THE COURT:    Next question, sir.

15         DEFENDANT:    ... the issue I would beg this Court to

16 understand is the Affidavit. That's what I'm questioning him

17 in regards to.

18         He is testifying that this is a true and accurate

19 statement. He is stating that he had no knowledge of the

20 whereabouts. That I, and the Defendant, made an attempt to

21 evade, to hide, to run.

22         What I'm trying to clarify for this record, public

23 record, is that not only did they have an address, they had a

24 telephone number, they had a location in both states...

25         THE COURT:    Sir...

1          DEFENDANT:   ... and that there had been

2   communication with several Government offices.

3          THE COURT:   Sir, the charge is not only failure to

4   register, knowingly failing to register with the Common Wealth

5   of Puerto Rico Authority, as required by the Sex Offender

6   Registration and Notification Act.

7          This is not a Probable Cause determination on

8   attempt to evade. This is a Probable... whether... the issue

9   is whether there is Probable Cause that you knowingly failed

10  to register. Next question.

11         DEFENDANT:   I don't wish to try the Court's

12  patience at all, but we're also considering an issue of bail

13  today. And, so that's why the question is being asked the way

14  it is.

15         THE COURT:   I think you have a fair point as to

16  that. So, I think that, as to that matter, I think that, if

17  you wish to ask questions as to attempt to evade, not so much

18  in the interest of Probable Cause, but because it's relevant

19  to bail, I will allow those questions because I think that you

20  have a fair point as to that particular concern.

21         DEFENDANT:   I will assure you that the question was

22  only in line with that thought. Each of the questions I have

23  for him are only along that line. I am not trying to defend

24  the charges at all.

25         THE COURT:   Alright, if you... well, are you not

1  contesting the charges then? Because, if that's the case, then

2  that will conclude the Preliminary Hearing. I will make a

3  finding of Probable Cause at this moment.

4          DEFENDANT:   What I will do...

5          THE COURT:   Are you contesting the charges or

6  you're not contesting the charges?

7          DEFENDANT:   ... is I will tell the Court, as I did

8  in the rebuttal of the Affidavit, I plead guilty to the facts

9  of this matter, but we have not determined the facts yet.

10          The Affidavit would stand as truth until rebutted.

11 And, so, as I mentioned, I sent a rebuttal of that so that we

12 can only entertain the facts.

13          I will have a copy of the original apostle sent to

14 this Court so that those informations would be introduced to

15 this Court, and it will have to be rebutted.

16          THE COURT:   Well, sir, I gave an opportunity to ask

17 for a continuance of this hearing, and you refused to do that.

18 So, therefore, I will not delay the proceedings any further as

19 to Probable Cause.

20          If you have any additional question for this

21 Witness, please do so.

22          DEFENDANT:   Yes, I do.

23          THE COURT:   Go ahead.

24          DEFENDANT:   If the Court would give me just one

25 moment.

CERTIFIED TRANSCRIBERS, INC.
1075 Carr. 2 Cond. Plaza Suchville #302
Bayamón, Puerto Rico 00959
Tel. # (787) 783−6623; (787) 617−9487

1        THE COURT:   Alright, go ahead.

2                        PAUSE

3  BY DEFENDANT:

4  Q.   Okay, sorry for that, sir. I'm ready. I apologize.

5  A.   Take your time.

6  Q.   Now, as mentioned before, the original charges occurred

7  in the State of Arizona, and the State of Arizona... I don't

8  know whether or not you have knowledge as to the actual

9  charges.

10        According to those charges, from your investigation,

11  what was the age of the individuals who were the alleged

12  victims?

13  A.   I don't think that... I can answer you that, but I don't

14  think that's relevant to the charges that the...

15  Q.   We'll let the...

16        LOPEZ-SOLTERO:   Your Honor, that would be

17  irrelevant, as to the age of the victims.

18        THE COURT:   Sustained, sustained. We're not here to

19  determine the facts of the underlying original sex offender

20  conviction. We are here to determine failure to register.

21        DEFENDANT:   I'm not trying to uncover the original

22  facts. That's is for the State of Arizona, not for the State

23  of Puerto Rico.

24        THE COURT:   Next question.

25        DEFENDANT:   The question was designed for a

1   particular reason. May I tell you the reason?

2           THE COURT:   Yes, yes, you may.

3           DEFENDANT:   He put, in his Affidavit, certain

4   information attesting to the truthful nature of it. If the

5   Witness on the stand has put forth, before this Court, an

6   Affidavit that is not truthful, then it cannot be introduced

7   as evidence in this matter.

8           THE COURT:   Sir, if there is a particular area that

9   you believe that there is a contradiction, you can go ahead

10  and pose the question. Alright?

11          DEFENDANT:   I'm trying. I really am trying.

12          THE COURT:   Alright, well, go ahead and ask your

13  next question. But, we're not here to determine the underlying

14  facts of the original conviction. Go ahead.

15          DEFENDANT:   No, just the accuracy of the Affidavit

16  is what I'm focusing on.

17          THE COURT:   Go ahead.

18  BY DEFENDANT:

19  Q.   As a matter of fact, do you have a copy of the Affidavit

20  that you signed before you?

21  A.   Not before me.

22          DEFENDANT:   Is it possible... because I need to

23  read off from the one I have here... if we can get him a copy

24  of the Affidavit?

25          THE COURT:   You can go ahead and read to the

1   Witness the pertinent part.

2           MR. LÓPEZ-SOLTERO:   He can read it.

3           THE COURT:   You can go ahead and read out loud the

4   pertinent part, if you wish to address that.

5   BY DEFENDANT:

6   Q.   You placed, in the very last paragraph, that, based upon

7   your training and experience, the facts concerning this

8   investigation you respectfully believe are sufficient for

9   Probable Cause.

10  A.   That's correct.

11  Q.   You then swore and ascribed to this information as being

12  truthful, and actual... factual.

13  A.   That's correct, sir.

14          DEFENDANT:   So, for the nature of Probable Cause, I

15  do believe that I have the right to cross-examine him in

16  regards to his Affidavit.

17          THE COURT:   What's your question, sir? I'm waiting

18  to hear one. Nobody has deprived you of the right to cross-

19  examine the Agent as to his Affidavit. But, your questions

20  have to be relevant. Go ahead. Next question.

21  BY DEFENDANT:

22  Q.   In regards with the issue with the Warrant in New Mexico,

23  you said it was for the exact same charge here.

24  A.   According to New Mexico, it is for failure to register as

25  a sex offender.

1  Q.   From what I gather from the Pre-Sentence Report,

2  apparently they're not claiming a failure. They're claiming

3  that... for violation of a Court Order.

4  A.   The documents that I have or that I provided to the

5  United States Government doesn't state that.

6        LÓPEZ-SOLTERO:   Your Honor, the Agent has no access

7  to the Pre-Trial Report.

8        THE COURT:   Well, but let's... let the Agent do the

9  testifying. Alright.

10  BY DEFENDANT:

11  Q.   But, you did check with the State of New Mexico.

12  A.   That is correct, sir.

13  Q.   And, they told you it was a failure issue?

14  A.   They sent me a copy of an Arrest Warrant, an active

15  Arrest Warrant, for failure to register as a sex offender.

16  That's what they provided me.

17  Q.   Has that been provided to Counsel?

18  A.   That is correct, sir.

19  Q.   Thank you.

20  A.   That is correct.

21  Q.   The Arrest Warrant in New Mexico, is it extraditable?

22  A.   It's not... I'll answer you the question, but it's not...

23  I don't think it's relevant to the charges in Puerto Rico.

24        LÓPEZ-SOLTERO:   Objection, Your Honor.

25        THE COURT:   Sustained.

1          DEFENDANT:   Well, we're talking about bail here

2    today, Your Honor. And, the fact that as to whether or not

3    there's an outstanding Warrant in a different state would

4    actually interfere with someone getting bail.

5          And, so, because that particular Warrant is not

6    extraditable, then it does pose relevance for the Bail

7    Hearing.

8          THE COURT:   There is... we're not dealing here with

9    a foreign country. This is New Mexico. So, we don't... we're

10   not talking about extradition in the sense that we have to

11   deal in the traditional manner of dealing with foreign

12   countries. Alright?

13         The question is whether there is a valid outstanding

14   Arrest Warrant. And, sir... Agent... is that Warrant... the

15   Warrant that you received from New Mexico, is it outstanding

16   as of right now?

17   A.   That is correct, sir.

18         THE COURT:   Alright, next question.

19         DEFENDANT:   I would like to correct that as for the

20   record. The actual issue in New Mexico has been removed from

21   that jurisdiction to Federal District Court, which makes the

22   Warrant in New Mexico moot.

23         As a matter of fact, the Petition for that going to

24   Federal Court is right here, and I'm just waiting to get

25   copies so I can follow through on the notice that's been sent

1   to New Mexico.

2            THE COURT:   If, during the Bail Hearing, you wish

3   to present any document that's relevant to that regard, I'll

4   be happy to evaluate it.

5            DEFENDANT:   Okay, what are we doing? Give me one

6   moment. I just need to have copies of this made so that the

7   Court can get a copy, the Defense Counsel... I mean not

8   Defense Counsel...

9            THE COURT:   Is this an Exhibit that you wish to

10  introduce?

11           DEFENDANT:   No, this is actually a presentment to

12  the Court in regards to this matter.

13           THE COURT:   Well, we can wait then for the Bail

14  Hearing.

15           DEFENDANT:   Okay, alright.

16           THE COURT:   And, then feel free to bring, during

17  the Bail Hearing, any documents that you wish to bring to my

18  attention...

19           DEFENDANT:   I got you.

20           THE COURT:   ... that are relevant for the matter of

21  bail. That's fine. You know, we can evaluate that.

22           DEFENDANT:   Okay.

23           THE COURT:   But, if there's a document that you

24  wish to introduce as a Exhibit, then those documents should be

25  presented to the Witness.

1          DEFENDANT:   Actually, I understand there'll be no

2    introduction of Exhibits on my part.

3          THE COURT:   Alright.

4    BY DEFENDANT:

5    Q.   Alright, the next question for you, sir.

6    A.   Yes, sir.

7    Q.   When you arrived at the home of Lares, the location, the

8    rented property in Lares...

9    A.   Correct.

10   Q.   ... you arrived there at what time during the day?

11   A.   It was kind of in the afternoon hours.

12   Q.   And, you had communication with several of the neighbors?

13   A.   That is correct, sir.

14   Q.   When I drove to the location, and got out of... exited

15   the automobile, your officers asked who was I. How did I

16   identify myself to you?

17   A.   I believe Brett Son of Isaac.

18   Q.   Okay, and the identification presented to you at that

19   time, what was the name on that identification?

20   A.   Brett Son of Isaac.

21   Q.   At what time during the detainment did you determine that

22   Brett Son of Isaac was not Brett Son of Isaac?

23   A.   I didn't determine that.

24   Q.   Well, your document state that.

25   A.   I just observed it. I looked at you, I confronted the

CERTIFIED TRANSCRIBERS, INC.
1075 Carr. 2 Cond. Plaza Suchville #302
Bayamón, Puerto Rico 00959
Tel. # (787) 783-6623; (787) 617-9487

1  photos that I had from the sex offender list in the United

2  States, and, as an a/k/a, it says different names, a whole

3  bunch of different names, plus the real name, Brett Jones.

4  Q.   Okay.

5  A.   We found out your I.D., and we have copies of it from the

6  State of California in your personal belongings.

7  Q.   My I.D.?

8  A.   That is correct, provided by one of your friends in

9  Lares.

10        LÓPEZ-SOLTERO:   Your Honor, if I may. I have to run

11  to Judge Fusté's Courtroom. I had a hearing set for 9:32 A.M.

12  AUSA Special Assistant Lomba is going to cover the rest fo the

13  hearing for me.

14        THE COURT:   Alright.

15        LÓPEZ-SOLTERO:   If that's fine with the Court.

16        THE COURT:   That's fine.

17        MR. LÓPEZ-SOLTERO:   Thank you, Your Honor.

18        THE COURT:   That's fine. You're excused.

19        DEFENDANT:   And, there's only about four more

20  questions, so it will be one moment.

21  A.   Oh, yeah, that's okay.

22        DEFENDANT:   One moment, so that there won't be a

23  disturbance while we wait for him.

24        WITNESS:   That's okay, sir. We'll wait.

25                    (PAUSE)

40

1  BY DEFENDANT:

2  Q.   You said that you had a copy of a California

3  identification?

4  A.   That is correct. It's in the Discovery package, as well

5  as your Social Security, from your belongings that you

6  provided to one of your friends, Felix, or they call him... I

7  think it's...

8  Q.   'Uva'?

9  A.   'Uva', correct.

10  Q.   Interesting.

11  A.   Yes.

12  Q.   And, you received these documents from a friend?

13  A.   That is correct... no, we don't have them in our

14  belongings. We just took copies and photos of it.

15        And, it says your name, it has some... several

16  credit cards with your name, Brett Jones, license, I believe,

17  and, yes, Social Security, a whole bunch of documents, and all

18  of them say "Brett Jones".

19  Q.   They all say "Brett Jones". And, you're saying that those

20  are mine?

21  A.   Well, 'Uva'...

22        DEFENDANT:   I most certainly have to object to

23  that.

24  A.   ... said that it was his.

25        DEFENDANT:   I most certainly have to object to

CERTIFIED TRANSCRIBERS, INC.
1075 Carr. 2 Cond. Plaza Suchville #302
Bayamón, Puerto Rico 00959
Tel. # (787) 783-6623; (787) 617-9487

1    that, not only once the items that he's claiming...

2                THE COURT:   Well, sir, you're testifying now.

3                DEFENDANT:   No.

4                THE COURT:   You see... well, you're... you can ask

5    questions... you can ask questions. This is Cross Examination.

6                DEFENDANT:   Exactly. But, he is testifying, under

7    oath, that those documents belong to myself.

8                THE COURT:   Well, sir, you are not here to argue

9    with the Witness.

10               DEFENDANT:   Exactly.

11               THE COURT:   You're here to ask questions to the

12   Witness. So, if you want to ask him how does he know that

13   those identifications that he received are yours, you are free

14   to ask him that question.

15               DEFENDANT:   That is fine. The only thing I was

16   doing was letting the Court know that there was an objection

17   to what was being said. That's all.

18               THE COURT:   Keep going.

19   BY DEFENDANT:

20   Q.   Where was I when you received those documents that you

21   claim were mine?

22   A.   Under arrest.

23   Q.   Where?

24   A.   In the Metropolitan Detention Center...

25   Q.   In the Metropolitan. So...

1  A.   ... Guaynabo, Puerto Rico.

2  Q.   ... that would mean that you did a follow-up

3  investigation?

4  A.   Correct.

5  Q.   Okay, when you went back and did your follow-up

6  investigation, did you obtain those items from the residence?

7  A.   I obtained them from the guy that you named *'Uva'*. He's

8  like a neighbor or friend of yours, and he said that "Here's

9  all Mr. Brett's documents that he left us.", with your drivers

10 license or... well, it has your photo so...

11 Q.   That's interesting.

12 A.   It has your photo, several credit cards with "Brett

13 Jones" on it. Everything says "Brett Jones"... everywhere.

14           In addition, I think there was a copy of the legal

15 document that you carry with "Brett Son of Isaac", and several

16 documents with "Brett Jones", "Brett Jones", "Brett Jones-

17 Theophilious", "Brett Jones-Theophilious" everywhere, so...

18 with your photo in the driver's license.

19 Q.   And, those were mine?

20 A.   Well, according to the identification, it has your photo.

21 Q.   No, no, no, I'm asking a specific question.

22 A.   Oh, they're yours, yeah. That's why *'Uva'* said that

23 they're yours.

24 Q.   They were mine? You found them in my possession?

25 A.   No, no, no, it was not in your possession, but they're

1   yours.

2   Q.    Then, how did you identify them as mine?

3   A.    Because it has your face on it.

4   Q.    Well, they are a lot of things that have my face. You

5   received the document earlier that you said was an official

6   document. It has my face, but it doesn't belong to me.

7   A.    Well, actually, yes, that's true. The document that you

8   showed me with the Brett Son of Isaac, it has your photo, but

9   it looks like homemade.

10  Q.    Interesting.

11  A.    So, I don't think that being legal compared to one from

12  California. So, I don't know.

13  Q.    Well, we don't want to get into what things look like. We

14  want to get to the actual specifics. You said that it had a

15  photo.

16  A.    Yes, that's correct.

17  Q.    And, you said, because it had a photo, that it must have

18  been mine.

19  A.    That is correct, sir.

20  Q.    Okay, so that means that the item that you received

21  earlier is mine?

22  A.    That is correct. It's yours.

23  Q.    The item you received where Counsel asked you to read

24  what was in red belongs to me?

25  A.    That is yours, yeah, Mr. Brett Jones-Theophilious.

1  Q.   Then, how come I've never had possession of that item,

2  that I've only seen it for the first time today?

3  A.   You will have it because it's part of the Discovery

4  package.

5           THE COURT:   Sir, questions. Not...

6           DEFENDANT:   That was a question. He said that...

7           THE COURT:   Sir, sir...

8           DEFENDANT:   ... because it has a photo...

9           THE COURT:   Sir, sir...

10          DEFENDANT:   ... it belongs to me.

11          THE COURT:   Sir, you're asking why it has not been

12  produced to you yet in Discovery, and this hearing is not

13  about why that document has not been produced yet in

14  Discovery.

15          The question is... this hearing is for you to ask

16  questions as to matters relevant to Probable Cause. Next

17  question, sir.

18          DEFENDANT:   He stated that, because it had a

19  picture of someone, that it belongs to them. What I am trying

20  to make clear is, just because something has a picture,

21  doesn't mean it belongs to that person whom's picture or

22  photos or image may be on it. That what I'm clearly trying to

23  clear up here.

24          THE COURT:   Noted. Next question.

25          THE COURT:   Thank you.

1  BY DEFENDANT:

2  Q.   You have stated, in several parts of your Affidavit, that

3  you had interviewed several people. You mentioned the owner of

4  the apartment building, you mentioned the *'Uva'* person, but I

5  don't note any names within your Affidavit.

6         Did you, by any chance, take notes and have a log of

7  the individuals that you spoke with.

8  A.   I will answer you that one, but correction. I never

9  stated, in the Affidavit, nothing about those witnesses. I did

10 interviews. I interviewed them eventually. And, yes, I do have

11 copies of their statements. They are in your Discovery package

12 that will be provided to you with all statements.

13 Q.   Interesting. I see that you mention here... I believe

14 paragraph number three, page number one... that, "Because this

15 Affidavit is submitted for limited purposes, I have not

16 included details of every aspect of the investigation. I am

17 thoroughly familiar with the information.".

18        And, then you mentioned about having discussions

19 with individuals.

20 A.   Correct.

21 Q.   Okay.

22 A.   Sir, to explain to you, it's a process. When you do...

23 Q.   No, no, no, I just... my question was specific. I said

24 did you put these names within your notes or within your logs

25 or within your report?

1  A.   They're there. That's what I answered you.

2  Q.   That's what I was asking you.

3  A.   Yeah, they're there with their statements.

4  Q.   And, the final question I have for you today is... and it

5  is relevant... and it is very important that you answer this

6  question truthfully... have you ever lied?

7  A.   A whole bunch of times in my life.

8  Q.   Okay, what is the...

9  A.   Especially when I was little.

10 Q.   Thank you. I'm not going to do that. I'm sorry we have a

11 relationship. Sorry, I apologize. How are we to believe that

12 the information in your Affidavit is truthful, since you have

13 just admitted to lying previously?

14 A.   I admitted to lying previously because, if I told you

15 right now that I didn't lie (sic), I might be lying in front

16 of the Court.

17         But, I do affirm that whatever it says in there is

18 true and the whole truth.

19 Q.   But, my question is how are we to believe you?

20 A.   Because it's the truth, and we will prove it here, in

21 Court.

22 Q.   Because you say it's the truth we have to believe it?

23         MR. LOMBA:   Your Honor, I think that the Witness

24 has already answered that question.

25         THE COURT:   Well, I think that the point has

1  already been made across. Sustained.

2          THE COURT:   I just wanted to... thank you, and I

3  appreciate that. I just wanted to make sure that I had made my

4  point with the line of questioning. I have no further

5  questions for this particular Witness.

6          THE COURT:   Alright, sir, you're excused.

7          WITNESS:   Okay, thank you, sir.

8          THE COURT:   AUSA Lomba, do you have any additional

9  witnesses?

10         MR. LOMBA:   No, Your Honor. At this time we would

11 like to request that the Court finds... makes a determination

12 of Probable Cause, and...

13         THE COURT:   Alright, hold on. Before I hear you as

14 to that, sir, are there... are you... or do you have any

15 witnesses here today to testify or you yourself will wish to

16 testify?

17         DEFENDANT:   Other than the documentation that we

18 spoke about earlier, that, since they already have a copy of

19 it, and since it is on file with the Secretary of State, to

20 introduce that now as Exhibits for the Court, and that would

21 be the apostle from the Secretary of State.

22         THE COURT:   Are those the documents that you

23 previously showed to the Prosecutor?

24         DEFENDANT:   That is correct.

25         THE COURT:   May I see, please, those documents for

1   a moment.

2                              (PAUSE)

3                  (Revision of documents by the Court.)

4              THE COURT:   Sir, would you like these documents to

5   be marked as Exhibits for purposes of this hearing?

6              DEFENDANT:   Yes, because they were used in the

7   course of this investigation.

8              THE COURT:   Any objection from the Government as to

9   this matter?

10             MR. LOMBA:   Well, Your Honor, the objection would

11  be for the following reasons. It's that those documents are

12  not legal documents. They have not been authenticated by any

13  witness or in any way during the hearing today.

14             So, we would object to those being made part of the

15  record.

16             THE COURT:   Well, I think that you are raising a

17  valid point. What I'm going to do is that I'll be taking into

18  account that this is a *pro se* Defendant.

19             MR. LOMBA:   Yes, sir.

20             THE COURT:   I'm going to be flexible and lenient as

21  to this aspect. I think that there is validity to the point

22  that you're making. But, I'll be flexible taking into account

23  that fact that the Defendant is *pro se.*

24             So, I'll allow them to be marked as Exhibits for

25  purposes for the Preliminary Hearing. So, they shall be marked

1   as Exhibits A and B for purposes of the Preliminary Hearing.

2   Alright?

3        (Whereupon,

4            the above-mentioned documents were admitted into

5   evidence as Defendant Exhibits A and B.)

6            DEFENDANT:   I will provide a copy of the originals

7   that have been authenticated with the Secretary of State, the

8   State of New Mexico...

9            THE COURT:   Alright, alright, so, at this moment,

10  Mr. Lomba, I'll hear you as to the matter of Probable Cause.

11           MR. LOMBA:   Yes, Your Honor. I understand that Your

12  Honor had the opportunity of hearing what the Special Agent

13  Albino testified before the Court, basically stating

14  information contained in the Affidavit.

15           So, at this time, I'm requesting from the Court a

16  determination for Probable Cause. I think all the elements of

17  the offense have passed through as evidence during the hearing

18  today, and that would be our request today, Your Honor.

19           THE COURT:   Sir, if you would like to address the

20  Court as to the matter of Probable Cause, I'll hear you.

21  Otherwise, the matter stands submitted.

22           Now, if you have arguments as to the matter of bail,

23  that's a separate issue, and I will also give you an

24  opportunity to be heard as to the matter of bail.

25           But, at this moment, I would like to address the

1 matter of Probable Cause. Is there anything that you would

2 like to say to the Court as to the matter of Probable Cause?

3             DEFENDANT:   On just the issue on the matter of

4 Probable Cause, most certainly.

5             THE COURT:   I'll hear you, sir.

6             DEFENDANT:   Alright, the law that is introduced as

7 Federal Code, Title 18, 2250, I believe that it requires an

8 individual to provide name, photo, current address, telephone

9 number, probably automobile information.

10            The jurisdiction happens to be the... for the State

11 of Puerto Rico, for the city of *Lares*, for the *Río Prieto*

12 *Bárrio,* the *Castañer* Police Department.

13            The *Castañer* Police Department, as the Witness

14 testified, had been in communication with myself. However, in

15 regards to the registration, not only did they never respond

16 to a single communication... I have a total of six, different,

17 certified letters that they refused at their location... a

18 lawsuit is filed in the *Lares* Tribunal Court in direct result

19 to them not allowing access.

20            I have a total of five, recorded phone calls where I

21 did mention, in English, that the call was being recorded,

22 where they laughed, hung up or said there was no one there

23 that speaks English. The Agent also testified that they had no

24 one that speaks English.

25            The fact that someone is claiming that no one made

1    an attempt, there were several attempts. That's why the

2    letters were sent certified mail.

3           The copy of the apostle that has been introduced

4    just for preliminary purposes, each of them have the name, the

5    identification number, the address, all current information,

6    for both this State and the State of New Mexico.

7           Also, in the issue of Probable Cause, it has been

8    brought to my attention that Section 2250 does not apply to

9    sex offenders who do interstate travel, and it occurs through

10   the affected dates of the law, the Sex Offender Registry Act.

11          Now, as I told everyone, my stay in Puerto Rico has

12   been as a result of health issues. I travel to and from. The

13   fact that anyone is saying that I've been here since July,

14   that's a fact.

15          That fact that anyone is saying that I've been here

16   continuously since July is a lie. It is incorrect, as the

17   Agent knows that he received a copy of two plane tickets.

18   Because I just did a function in California, to where the

19   gentleman sitting right here was at that function, where I

20   traveled back to New Mexico at least three times since July.

21          I have not been continuously in Puerto Rico, except

22   for these last two months, and that has been without my will.

23   I have medical needs to be taken, care of, and my specialists

24   are all in New Mexico.

25          So, as far as anyone claiming that I have violated

1  some law or that Brett Jones-Theophilious has violated some

2  law or anyone else has violated some law in regards to failing

3  to do something, the lawsuit filed in the *Lares* Tribunal Court

4  should provide enough evidence and proof as a copy of the

5  certified mail showing refused, returned, as a part of that

6  particular matter. It is introduced has evidence into that

7  particular case.

8          There's also a case that I have to provide

9  information back to the Court, because I have been asked by

10  the presiding judge of that Court to provided a response to an

11  Order that was introduced, and I have yet to be able to do

12  that.

13          So, as far as anyone saying that there's enough

14  evidence to do anything, all we have is someone saying what

15  someone said about something said when the facts prove that

16  there is no way that one individual did not give enough

17  information.

18          Lastly, the documents that he claimed that he had on

19  file, that he had on hand prior to coming and doing any

20  arrest, provided all the information necessary for the

21  registration requirements in any state in the Union.

22          The only thing it did not provide were fingerprints

23  or DNA. Fingerprints and DNA are unchangeable. No one can

24  change DNA, and to alter your fingerprints would take a lot of

25  work, of which I cannot afford. So, those are misnomers when

1  it comes to registration.

2          THE COURT:   Alright, thank you, sir.

3          DEFENDANT:   If I could get some water?

4          THE COURT:   Yes, certainly. That's fine, here. I'm

5  sorry, I just ran out of water myself, so I'll give you

6  whatever is left.

7          DEFENDANT:   No, no, that's fine. That should be

8  more than enough for now. Thank you.

9          THE COURT:   Very well, this is the decision of the

10 Court as to the matter of Probable Cause regarding the

11 criminal offense under Title 18, United States Code, Section

12 2250, Sub-Section (a).

13          I do make a finding that there is Probable Cause

14 that this offense has been committed. There has been testimony

15 given today by the Agent that this Defendant has not

16 registered in Puerto Rico as a sex offender.

17          There's also testimony that has been given that this

18 Agent interviewed several individuals, one of whom was the

19 landlord. I believe that he indicated that this Defendant had

20 been residing in Puerto Rico since July of 2012.

21          There's also evidence that this Defendant has been

22 convicted in Arizona for either... for a sex offense, and also

23 that there is an outstanding Arrest Warrant in New Mexico.

24 There appears to be perhaps an inconsistency, but not

25 necessarily so as to the Arrest Warrant in New Mexico.

1        The Agent testified that it was also for failure to

2   register. The Pre-Trial Services Report said "For violation of

3   a Court Order.".

4        Well, those two things are not necessarily

5   inconsistent. I think that we would have to clarify what

6   exactly is the nature of the Order that was issued in New

7   Mexico. But, nonetheless, regardless, there is an outstanding

8   Arrest Warrant from New Mexico.

9        But, ultimately, the real relevant fact is...

10  because the outstanding Arrest Warrant really goes more to the

11  matter of bail than to the matter of Probable Cause... the

12  fact is that he has been convicted of a sex offense in

13  Arizona. He is required to register. He has not registered in

14  Puerto Rico.

15       According to the testimony, Defendant has been

16  residing since July of 2012, and, even though he disputes his

17  identity as being Brett Jones-Theophilious, the Agent

18  testified that he received multiple either I.D.'s or cards

19  that have the Defendant's photograph, and identify him as

20  Brett Jones.

21       Therefore, putting all those matters into account,

22  although the Defendant clearly disputes some of this facts, at

23  this juncture of the proceedings, the determination is whether

24  there is Probable Cause. It's not a determination as to

25  whether the Government has proven this matter beyond a

1   reasonable doubt.

2          I believe that the Defendant has also indicated that

3   they're some certified letters that he sent, and there were

4   some issues regarding the police station not being able to

5   speak to him in the English language.

6          Some of those issues, to the extend that they may

7   show that he was attempting to register, might be relevant for

8   purposes of the offense that has been charged.

9          Nonetheless, at this stage of the proceedings, the

10  threshold is Probable Cause, not beyond reasonable doubt. And,

11  the question is, is there Probable Cause based on the

12  testimony that I've heard here today?

13         Yes, I do make such finding, and I make a finding of

14  Probable Cause as to the violation under Title 18, United

15  States Code, Section 2250, Sub-Section (a).

16         Having said that, we do need to address the matter

17  of bail, and I would like to first hear from the Government as

18  to the matter of bail. So, AUSA Lomba, I'll hear you at this

19  moment.

20         MR. LOMBA:   Yes, Your Honor. We are requesting that

21  the Defendant remain detained without bail, and that is based

22  on the nature of the offense committed by the Defendant.

23         But, also, with the information as to his past

24  Criminal History, this Defendant has a history of arrest and

25  conviction. He was convicted in the year 1998. In addition to

1  that, there is a Warrant for his arrest still pending in the

2  State of New Mexico.

3       This Defendant... as per the recommendation of the

4  Pre-Trial Services Report Officer, this Defendant presents a

5  risk of flight and a risk of nonappearance. So, therefore, we

6  are requesting that the Court finds that the Defendant remain

7  detained without bail, Your Honor.

8       THE COURT:   Let me hear from the Defendant. Sir,

9  I'll hear you as to the matter of bail at this moment.

10      DEFENDANT:   The document, the presentment that was

11  sent to the Court rebutting the Affidavit, was also a Counter-

12  Claim Cross Complaint.

13      The fact that... and it will take me a minute to get

14  back to my notes, because not only have I prepared for this,

15  but I also prepared for the decisions that have been made

16  today.

17      The flight risk, first, there is no so-called

18  Criminal History in over twelve years from anyone, and the

19  fact that, not only that everyone had the address, the

20  Secretary of State, the Department of Motor Vehicles, everyone

21  within the State, including the *Lares* Tribunal, the *Arecibo*

22  Tribunal, had the address, had the location of my whereabouts.

23      There has been no attempt to do anything, to flee,

24  to evade, to do anything. The situation in New Mexico is an

25  non-extraditable Warrant, but this Court is fully aware that,

1   once a matter is removed from State Court to Federal Court,
2   that quashes that particular notice of Warrant.
3          The issue is being taken to Federal Court based on
4   several laws, but, in particular, Bond versus the United
5   States.
6          As I mentioned earlier, the Supreme Court made it
7   quite clear in the Bond case, and many people might be
8   familiar with that case, and I won't elaborate to much. But, a
9   woman took some chemicals, threw them in another woman's face
10  as a result of infidelity with her husband. She was sentenced
11  to twelve years in Federal penitentiary.
12         The case was appealed because Bond who, under the
13  Collective Entity Theory, was considered and construed to have
14  constitutional rights, and the Court ruled that her 10th
15  Amendment right to have the case tried in case in State Court
16  prior to Federal had been interfered with. So, the case was
17  remanded back to State Court. Well, that's the situation going
18  on in New Mexico.
19         The Court keeps trying to paint that there is no
20  difference between Brett Son of Isaac and Brett Jones-
21  Theophilious.
22         However, the United States Supreme Court and the FCC
23  versus ATT case of 2011 made it quite clear that there is
24  definitely a distinction between the fictional legal person
25  and the real person.

1          Not only did they make distinction, but they've made

2    that distinction in several cases, and so that distinction is

3    exactly what the documents that have been presented to the

4    Court clearly indicate.

5          They are both Affidavits, they are both notarized by

6    the Secretary of State for two different states. One of them

7    even falls under the Geneva Convention that is called an Act

8    of State. There is no need for anyone to run because no one

9    has done anything wrong.

10          When we talk about whether or not there has been

11   contact with the *Castañer* Police Department, the Witness

12   testified that there had indeed been contact with the *Castañer*

13   Police Department.

14          How could someone be attempting to flee or be a

15   flight risk if they are contacting all of these agencies which

16   have arresting authority?

17          The issue in New Mexico, speaking in regards to bond

18   and being a flight risk, the presiding judge for that Court is

19   Judge Sleezy (phonetic). Judge Sleezy and I are on a first-

20   name basis for the most part. I don't call him by his first

21   name, I call him Judge Sleezy, because he is the presiding

22   judge of the 7th Judicial District Court where this Warrant

23   says to have come from.

24          Not only have I been in his office three times this

25   year alone, but no one had ever mentioned anything about this

1   Warrant until the day of the arrest. Had I known about it when

2   I was in New Mexico, in November, I would have taken care of

3   this issue. But, immediately, I sent them a Notice of Removal,

4   and brought it to Federal Court, not as a tactic, but as the

5   simple fact that the matter in Arizona, the Plea Agreement,

6   had specifics to it which did not require continual

7   registration for any life term. There was a limit to it. And,

8   this State, the State of New Mexico, are interfering with

9   that.

10          Finally, in regards to bail and being a flight risk,

11  I look at this Pre-Sentence Report... sorry, I got one hand

12  pretty much tied behind my back... I look at the Pre-Sentence

13  Report, and I notice quite a few inconsistencies with the

14  actual facts.

15          I noticed that the individuals putting together the

16  report were going on with the information presented before

17  them, from one computer to the next.

18          But, this Pre-Sentence Report, as you mentioned in

19  your determination previously, contradicts the Affidavit by

20  the officer who did a thorough investigation. It mentions that

21  there was a disorderly conduct and a criminal trespass, but it

22  shows that no Complaint was filed.

23          Apparently, the Prosecution wants to use that as

24  evidence that there is a Criminal History, when he has no idea

25  as to the circumstances around that, and why no Complaint was

60

1    filed, and why nothing was done any further.

2         We have a Dismissal Without Leave of the District

3    Attorney in Mecklenburg County (phonetic), North Carolina.

4    But, they want to use that as an issue for denying bail. The

5    Court is fully aware that, because of my health issues, I am

6    not one who has access to finances. However, it is at this

7    time during this...

8         THE COURT:   Sir, I am not aware of that. But, if

9    that's the case, that you don't have access to finances, if

10   you consider yourself indigent, and you need the services of

11   an attorney as I have said to you several times, if you would

12   like to have an attorney to represent you, all you have to do

13   is fill out a Financial Affidavit.

14        And, if the Court determines that you're indigent,

15   the Court will provide an attorney for you free of charge. You

16   may proceed. Go ahead.

17        DEFENDANT:   Okay, again, as I will bring to the

18   Court's attention, based on the facts, there is no finances in

19   order to pay for any bill. As I mentioned I will introduce

20   this during the Bail Hearing, so I need to get copies to be

21   able to present to...

22        THE COURT:   Alright, I'll take... to the extent

23   that they're relevant to show that you don't have the finances

24   to be able to post bail, I think that's relevant. So, let me

25   look at these for a moment.

1          Are these... I see, sir, that these are documents

2    that are written in pencil. Are these... did you write these

3    yourself? Is this your own handwriting or is this... or are

4    these letters from somebody else? What are these documents?

5          DEFENDANT:   Did you read the caption?

6          THE COURT:   I saw the caption, but I would like to

7    know where do these come from? Is this like you... you're

8    trying to... is this like a Motion that you're writing *pro se*

9    that you would like to get filed with the Court?

10         DEFENDANT:   That is a presentment, as I mentioned

11   to you earlier, and you told me to hold off on it until this

12   portion of the hearing.

13         THE COURT:   Oh, that's fine. If you want to file it

14   as a *Pro Se* Motion, I don't have any problem with that. We

15   will scan it, and we'll file it. So, just give me a second.

16         But, there's also a small piece of paper that is

17   kind of like A.. I don't know... is this also a separate

18   Motion?

19         DEFENDANT:   That is inclusive in that, and I

20   believe it is page three. And, that's backed by the Public Law

21   93224. That is the Full Faith and Credit Act introduced by

22   Congress or actually known as the Federal Financing Bank Act

23   of 1973.

24         THE COURT:   It just looks like a handwritten check

25   in its entirety.

1          DEFENDANT:   Yes, it is not a check. It is

2 considered a Bill of Exchange under Unicitrel (phonetic).

3          THE COURT:   Alright, just give me a second so I

4 could look at your *Pro Se* Motion. But, we will file... we're

5 going to scan this Motion, and we're going to file it as a *Pro*

6 *Se* Motion, and let me just take a moment to read it.

7                        (PAUSE)

8            (Revision of document by the Court.)

9          THE COURT:   And, actually, I'm going to... let's

10 make a photocopy because that way... since the Government

11 doesn't have access to the Motion, let's make a photocopy. If

12 you would like to use the photocopy machine in chambers, you

13 might be able to get a faster copy.

14          DEFENDANT:   If it is okay if I continue until they

15 bring the copies back.

16          THE COURT:   Sure, absolutely, absolutely.

17          DEFENDANT:   And, then we could talk about that

18 then.

19          THE COURT:   Absolutely, you may proceed. Go ahead.

20          DEFENDANT:   The incarceration, the imprisonment,

21 has resulted in no access to medical.

22          As a matter of fact since... well, I think I

23 received the... it's known as Anatrepteline (phonetic).

24 Anatrepteline acts as a muscle relaxant, and an agent that

25 allows me to relax enough to be able to get some sleep.

63

1          As a result of the fact that I have been unwilling

2   to notarize documents with a autograph or a signature that

3   says Brett Jones-Theophilious, who I say that I am not, they

4   have decided to put me in special housing known as

5   "Administrative Segregation".

6          Administrative Segregation has a wonderful little

7   room on the opposite side of the cell. It's called a "Law

8   Library".

9          They are fully aware that I am speaking on behalf,

10  and that I am Counsel for this matter, but I have never seen

11  the inside of that room nor ever had access to any legal

12  supplies, legal materials, legal access whatsoever.

13         I am told that I must get a Court Order when there

14  has been, oh, I would say, at least three, four hundred cases

15  in the last fifteen years that talks about access to the Court

16  within a prison confinement.

17         Now, I'm not here to bring up all of the issues that

18  happened within the facility, but one of the most fundamental

19  of accesses is the right to access the Court. It has been the

20  most fundamental of all rights that anyone who has been

21  detained or in prison can have. I have not been afforded that

22  right.

23         The Court has the leeway, the same as New Mexico did

24  when they thought that someone, as it says here, did not obey

25  a Court Order... I never received a Court Order... but the

1   Court has that very same option to issue an Arrest Warrant.

2          When the questioning of the Witness was done, as I

3   mentioned, the United States Supreme Court has said in several

4   cases... and, because have no access to my files, I have no

5   access to the unit where the proof of the contacting of the

6   *Lares* Police Department, and the *Castañer* Police Department,

7   and the lawsuits filed within the State of Puerto Rico

8   regarding that whole issue... I have no access to that because

9   I don't have access to getting into the unit to pull that

10  information and provide proof.

11         If the Court will deny bail, I ask the Court for

12  leave, at least a week, to be able to gather up the

13  information that I'm going to need to present as proof of the

14  information that I produced earlier.

15         THE COURT:   Thank you for your argument, sir. I'm

16  just simply waiting for my Courtroom Deputy to bring a copy of

17  your Motion.

18         DEFENDANT:   And, then I will continue with that

19  once it gets here.

20         THE COURT:   Well, I think that, in the interest of

21  time, you should continue at this moment. I'll read your

22  entire Motion. I will read it.

23         But, if there's anything else that you need to add,

24  this is the moment to do so.

25         DEFENDANT:   Throughout this matter, there is going

CERTIFIED TRANSCRIBERS, INC.
1075 Carr. 2 Cond. Plaza Suchville #302
Bayamón, Puerto Rico 00959
Tel. # (787) 783−6623; (787) 617−9487

65

1  to be the issue of Williams versus the United States. The fact
2  that most courts operate as a... how did they put it... a
3  "Legislative Tribunal", and not a constitutional body, so the
4  issue of jurisdiction is going to be one of the prime missions
5  for this matter.

6        In Braswell... and this is not any access to any
7  legal information... this is information that I retained...in
8  Braswell versus the United States, the Supreme Court ruled on
9  the Collective Entity Theory.

10        And, it talked about how, under the Collective
11  Entity Theory, the legal person, the legal fiction, the
12  individual, the person, the instrumentality, the entity, and
13  so on and so forth, can all be classified as one entity, and
14  they referred to it as a Collective Entity Theory.

15        I am... by telling everyone, my name has always been
16  Brett Son of Isaac. There is no birth certificate or anything
17  else by which anyone will find that will ever say Brett Jones-
18  Theophilious or anything else.

19        That is a name that I created, gave to a Court, and
20  then ordered the name changed for the Collective Entity, the
21  legal fiction.

22        It was stated on the record that being the case. So,
23  when I say that I've always been and have never been anything
24  other, that is exactly what I'm stating to this Court. That
25  I've always been Brett Son of Isaac, and I use Braswell versus

1   the U.S. to support the fact that there is a difference

2   between the Collective Entity and the actual natural person,

3   real man.

4          The FCC versus ATT, that case being in 2011, said

5   the exact same thing. It just spoke of personal property. But,

6   the Supreme Court made it quite clear in parenthesis that

7   there is a difference between the legal person and the actual

8   natural being.

9          And, then we have the, as I mentioned earlier, Bond

10  versus U.S., and Lanier versus U.S. (phonetic) ... and please

11  do not take this personally... but Lanier versus the United

12  States, in 1979, says that it is incumbent on everyone and

13  anyone who brings forth a Complaint against a Judicial Officer

14  that they give notice.

15         I... again, don't take offense... must notice the

16  Court that, if any of the entitlements that are backed and

17  supported by the United States Constitution, and the laws of

18  humanity are infringed upon, then I must give Judicial Notice

19  on that.

20         THE COURT:   Well, as I said, sir, when you were

21  brought for Initial Appearance, I believe that you were handed

22  a copy of the Criminal Complaint with the Affidavit, and

23  that's the notice that is being given to you as to what's the

24  nature of the charge, and what's the Affidavit in support.

25  And, I believe that, during the Initial Appearance, we also

1  explained to you what was the nature of the charge. So, that's

2  one of the purposes of the Initial Appearance.

3          But, if... I have received your Motion. Can you

4  please give a copy of the Motion, since this has not been

5  filed yet in CMECF (phonetic), and he doesn't have a copy of

6  the same. Can I have a paper clip or something so that we can

7  just have all of this together?

8          DEFENDANT:   Could I also mention one more thing to

9  you?

10         THE COURT:   Yes, sir.

11         DEFENDANT:   The Complaint that you are referring

12 to, apparently, when I got taken down to the Marshal's Station

13 here, in this particular Courtroom, they took the Complaint. I

14 have not seen the Complaint since the day I was here.

15         THE COURT:   Oh, we'll, fix that right now. Ana,

16 could you please make a printout of...

17         DEFENDANT:   Oh, Counsel gave me a copy.

18         THE COURT:   Oh, you have another copy?

19         DEFENDANT:   Yes.

20         THE COURT:   So, you do have it right now with you,

21 a copy of the Criminal Complaint and the Affidavit?

22         DEFENDANT:   Yes, she gave me the copy. I do have a

23 copy.

24         THE COURT:   Alright, good, good, alright. Thanks

25 for bringing that to my attention.

1                              PAUSE

2          DEFENDANT:   And, you will note, while reading that,

3  that it mentions the document that was sent to the Court on

4  the 4th, and it speaks of it in the past tense.

5          THE COURT:   Alright.

6          DEFENDANT:   Which means that... oh, I'm sorry. I

7  should bring to your attention that I have not had an

8  opportunity to call a single family member or a single member

9  of my team to let them know.

10         THE COURT:   Alright, we'll... please, we'll

11 address that point once we're done with the matter of bail.

12 Okay?

13         DEFENDANT:   Okay.

14                             PAUSE

15         DEFENDANT:   If I could disturb you just one moment,

16 there is something I did forget to mention?

17         THE COURT:   Yes?

18         DEFENDANT:   In regards to this Bail Hearing, I

19 just... if he's still here, the Agent for Homeland Security

20 Investigation, I just have a question that I need him to

21 answer in reference to the Bail Hearing.

22         THE COURT:   Well, sir, the Preliminary Hearing is

23 over. But, if there's any argument that you would like to...

24 if there's any argument as to the matter of bail that you

25 would like to address in Court, I'll be glad to hear you. Is

1   there any argument you would like to make to the Court?

2           DEFENDANT:   It's not *per se* an argument. It's a

3   substantiation of the fact that there is no flight risk.

4           THE COURT:   Alright, so, I'll hear your argument or

5   your point as to why you believe you're not a flight risk.

6           DEFENDANT:   Not only... at, approximately, four,

7   thirty, on the 28th of December, that I received notice...

8   that's why you... by stopping the questioning... when I was

9   asking him about what time did he start his investigation that

10  day.

11          At four, thirty, I received a call. That call was

12  indicating that there were police at the location looking for

13  me.

14          Now, because I had just treated a family to dinner,

15  we left, had an overheating problem with the automobile.

16  Instead of fixing it, we added water and drove back. It

17  overheated twice more.

18          I dropped the family off, and proceeded to the home

19  knowing that those officers were there. When the officers

20  asked me who I was, and I gave them that information, I

21  literally said to them in regards to the fact that I knew that

22  they were there.

23          They asked me how did I know. I said "Because you

24  guys have been talking to all of the neighbors in the area,

25  and they made it no point to get in contact with me to let me

1    know that you guys were here.".

2         If I was a flight risk or trying to avoid anything,

3    would it not have been prudent for me to head someplace else,

4    and wait until they were no longer there, then come and

5    collect whatever I needed, and then leave?

6         The Affidavit provided by that individual attests to

7    so many different things that are not accurate. Not only have

8    I been, for the last ten years, an active member of the

9    community, helping everyone and anyone with their financial

10   issues, even with legal issues, as a private Attorney General

11   under U.S. Code, but doing this at no charge.

12        Why? Because it is an issue of giving back to the

13   community, and the reason why I need a week. I don't care how

14   long they keep me inside after that.

15        I have eighteen, different mortgages that I promised

16   individuals that I would do certain things on, that I would

17   send out certain correspondence.

18        I can't send out the correspondence from where I am,

19   meaning I can't keep my word. I've always been a man of my

20   word. If I say that I will do something, I do it. I am known,

21   throughout basically the world now with the YouTube videos

22   that I do, and the communication I do around the world, as a

23   person who keeps his word.

24        As my father said, and as I say to everyone, "A man

25   is nothing without his word.". If individuals ask me, they get

1   my word.

2          So, when the officers were there, not only does my

3   phone record every call... and I planned on... because the

4   individual who was on the other line is part of my team...

5   bringing that, and introducing that as evidence.

6          The calls to the *Castañer* Police Department letting

7   them know that it's recorded, bringing that before this

8   matter, not only am I telling the individual that I'm headed

9   home, that the police are there waiting for me, and that I am

10  not going to try to avoid this. Why? Because this issue needs

11  to be resolved once and for all.

12         The issue of the Plea Agreement in Arizona will come

13  up in this matter. That Plea Agreement, under the laws of

14  Arizona, permitted a Rejection of Probation, which included

15  the registration requirements accepted on the record in the

16  State of Arizona. It is a matter of the official record for

17  that matter.

18         I gave myself a promise that it would happen for ten

19  years, that I would voluntarily do it always reserving my

20  rights under Uniform Commercial Code, Article 3, Section

21  108... or excuse me... Section 1, Article 308... Article 1,

22  Section 308, sorry. And, I kept my end of the bargain, but

23  then I said, to keep there from being a problem, I would

24  continue.

25         When *Castañer* refused to accept those items, I

1  continued to send them, up to six times. We'll be calling in,

2  and I'll bring this information up later in the witness list,

3  the Postmaster for *Castañer* Post Office who hand-delivered the

4  documents to the Police Department, and the Postmaster for

5  *Lares* who also made a plea to the *Castañer* Postmaster to

6  deliver those items because the Police Department was refusing

7  it. There hasn't been anybody attempting to not do anything...

8          THE COURT:   Alright, I think that you have

9  communicated your... you have articulated your point as to

10 both, how you showed up to the authorities in *Lares,* and also

11 about the situation in Arizona, and your rejection of the

12 registration requirements.

13         DEFENDANT:   Okay.

14         THE COURT:   So, I think that you have conveyed your

15 point clearly.

16         DEFENDANT:   Now...

17         THE COURT:   This is the decision of the Court.

18         DEFENDANT:   ... on that point of the rejection...

19         THE COURT:   Well, sir, sir, I think I have given

20 you abundant time to express yourself. If you're going to say

21 something, get to the point, and say it succinctly.

22         I have given you much, much more time than I have

23 even given the Prosecutor to express themselves. Alright?

24         DEFENDANT:   I appreciate it. I do appreciate it.

25         THE COURT:   So, if there's anything else, this is

1   your last shot, go for it, and go straight to the point.

2          DEFENDANT:   Okay, I'm not trying to try your

3   patience, and I do appreciate it.

4          The issue of the rejection that will be brought up

5   later is under the Full Faith and Credit Clause of the United

6   States Constitution. That's all I was going to mention.

7          THE COURT:   Alright, thank you, sir. Alright, I

8   would like to begin with the following.

9          I have read the *Pro Se* Motion that has been tendered

10  today, and that will be scanned and filed in the electronic

11  system.

12         And, I would like to say that there is a section

13  that a Self-Plea of Guilty to Facts says:

14         "Based on the facts contained herein, and on the

15     record, I enter a plea of guilty to the facts only, and a

16     plea of innocence to the charges on behalf of my client

17     Brett Jones-Theophilious.".

18         Well, I will simply... for purposes of the record, I

19  will take that as a not guilty plea regarding Defendant Brett

20  Jones-Theophilious.

21         Now, as to the matter of bail, several things. I

22  think that the Defendant has well articulated some reasons why

23  he believes that he is not a flight risk. I think that one of

24  them being that, when the police showed up in *Lares,* he went,

25  and presented himself. That he did not try to hide or evade

1  from the police officers. So, in that regard, I believe that

2  he has made his point across.

3           Now, he has also brought to the attention of the

4  Court that there was some Plea Agreement of sorts in Arizona

5  that allegedly waived his requirement to register or that...

6  or where he rejected the matter of probation.

7           But, as far as I have from right now on the Pre-

8  Trial Services Report, it indicates that Defendant was

9  sentenced to a one year of imprisonment as to one count of

10 sexual assault to be served consecutively with any other

11 sentence imposed.

12          And, according to the testimony that I heard, the

13 Defendant has not registered here in Puerto Rico, and is being

14 sought in New Mexico for also failure to register.

15          So, the first thing is that we seem to have a

16 pattern. And, although certainly we cannot take matters that

17 have resulted in dismissal or acquittals with the same degree

18 or weight that we take matters that have resulted in

19 convictions... dismissals or acquittals are one thing...

20 convictions are another... but, yet, the 1st Circuit has

21 indicated that, when there is a pattern of arrest, those

22 matter can be taken into account.

23          And, we see, for example, that, in 1997, the

24 Defendant was detained for disorderly conduct and criminal

25 trespass, in 1998, for failure to appear in a first degree

1   murder case, and a sexual assault, but, eventually, was

2   convicted only as to the sexual assault. In 2005, failure to

3   register, 2012, an Arrest Warrant outstanding in New Mexico.

4          So, although certainly the Defendant is correct in

5   terms that he does not have a prior... or that he does not

6   have a pattern of convictions... he's certainly correct in

7   that regard... there is a history of prior encounters with the

8   law with at least one conviction being in Arizona.

9          In addition to that, incrementing the potential for

10  risk of flight, we have the aliases, which, in the

11  Complaint... this Complaint, in the caption, indicates Brett

12  Jones-Theophilious, also known as Stevie Branch-Trickle

13  (phonetic), also known as B.J. Tuccio (phonetic), and also

14  Brett Son of Isaac. I believe that the multiple aliases also

15  increments the potential for risk of flight.

16          I think that the testimony at the Preliminary

17  Hearing is clear as to why the Agent believes that the

18  Defendant presently here, before the Court, is Brett Jones-

19  Theophilious.

20          Now, of greater concern is also that, according to

21  the Pre-trial Services Report, this Defendant was found in

22  possession of an identification document that indicates that

23  it was issued by the land of Pangea (phonetic).

24          And, according to the documents found, it indicates

25  that the Grantor (phonetic) will never submit to any

1  jurisdiction at any time or in any situation.

2          So, it appears that this Defendant does not

3  recognize the jurisdiction of the United States, and that he

4  is not willing to submit to its jurisdiction, to the

5  jurisdiction of this Court. That clearly presents some

6  significant concerns as to...

7          DEFENDANT:   I have to object to that.

8          THE COURT:   Yes, sir?

9          DEFENDANT:   I have to object to that. I thought we

10  clarified that at the very beginning of this matter when I

11  first stood up to the Court.

12          THE COURT:   Well, if you are... you can say for the

13  record, if you like, that you're willing to submit. Are you

14  willing to recognize and submit to the jurisdiction of the

15  Court?

16          DEFENDANT:   **NO AUDIBLE RESPONSE FROM DEFENDANT.**

17          THE COURT:   I think you were indicating that you

18  were making a Special Appearance. I think you had said more

19  than once that you were making a Special Appearance.

20          DEFENDANT:   Yes, and, as such, that is allowed

21  under law.

22          THE COURT:   Alright.

23          DEFENDANT:   But, what I'm trying to get the Court

24  to understand is there has been nothing that I've ever stated

25  about not recognizing jurisdiction.

1          The first thing I just imposed... or posed to the

2   Court, when I walked up here, and I just sat here, and spoke

3   about what's jurisdiction.

4          I brought up Williams versus the United States.

5          THE COURT:   Alright, so the Court will take into

6   account that the Defendant is now indicating that he is

7   willing to submit to the jurisdiction of this Court.

8          That does not negate the fact, however, stated in

9   the Pre-Trial Services Report, that the Defendant was found in

10  possession of identification that basically says that he's a

11  non-citizen national of America (phonetic), Travel Permit

12  I2546554AADX, which was issued by the land of Pangea. The

13  front of the documents reads as follows:

14       "The General Administrator, Grantor, Captain,

15       Beneficiary, Director, governor, Landlord, Commander of

16       Self-Determination and Ordination of All Levels, your

17       conscientious existence (phonetic), four thousand,

18       twenty-six, BCE. Expiration Date: 12/31/3099 A.D., not a

19       Collective Entity.

20       All contracts are conditionally excepted under

21       conditions listed or reversed without prejudice and

22       rights reserved. Peace treaty by a peaceful, non-

23       combative, non-aggressive inherent of the land.

24       All contracts by a minister are payable to the

25       United States of America without recourse.".

1        On the reverse side of the document, it reads:

2        "The Grantor will never submit to any jurisdiction

3    at anytime or in any situation. That my human rights are

4    never to be trampled, and, for each instance, as well as

5    offense, against my secured rights are a penalty, and

6    twenty thousand dollars will be due at the time of such

7    offense and/or initiation of such contract offers.". And,

8    it goes on with other matters.

9        So, sir, I'm just simply reading what the Pre-Trial

10   Services Report has submitted to the Court in terms of the

11   identification document that was produced.

12       Although, I will also take into account your

13   statement that you are now willing to acknowledge and

14   recognize the jurisdiction of this Court.

15       So, having said that, I believe that there are no

16   conditions of release to adequately address the concern of

17   risk of flight, and I issue Defendant's appearance to further

18   Court proceedings based on the pattern of aliases, his

19   unwillingness to recognize his truthful name, his pattern of

20   failure to appear or failure to register or outstanding

21   Warrants, and there is a pattern of prior encounters with the

22   law, and also concerns are raise about even the identification

23   document found in his possession.

24       Taking all those matters into account, and that,

25   according to the Pre-trial Services Report, there is an

CERTIFIED TRANSCRIBERS, INC.
1075 Carr. 2 Cond. Plaza Suchville #302
Bayamón, Puerto Rico 00959
Tel. # (787) 783-6623; (787) 617-9487

1  outstanding Arrest Warrant from New Mexico, I find that the

2  Defendant presents a risk of flight, and that he should be

3  detained on those grounds.

4          Therefore, Mr. Brett Jones-Theophilious you are

5  hereby ordered detained, also known as Brett Son of Isaac. You

6  are hereby ordered detained pending trial on the basis of risk

7  of flight.

8          As to the matter of the access to medical treatment,

9  a memo... a Memorandum shall be sent to the Bureau of Prisons

10 to alert the medical staff, at the Bureau of Prisons, that the

11 Defendant has indicated that he is not receiving medical

12 treatment for his conditions.

13         I believe that there was a first Memorandum

14 indicating two conditions, correct?

15         COURTROOM DEPUTY:   Yes, Your Honor.

16         THE COURT:   Alright, so you might want to resend

17 that Memorandum as well. So, that second Memorandum will be

18 sent so that the Defendant can be evaluated by the medical

19 staff at MDC, and treated accordingly with the pertinent

20 treatment, if necessary.

21         As to the ability to call a family member, Marshals,

22 please give the Defendant an opportunity to call his family.

23 So, whether that's done here or whether that's done in MDC, I

24 leave that to the discretion in terms of what's the most

25 practical aspect. But, I believe that the Defendant should be

1  given an opportunity to be able to call a family member.

2         So, please give him that chance either here or at

3  MDC, but please make sure that he's given that opportunity

4  today so that he can at least contact a family member, and

5  advise his family member that he has been arrested, and that

6  he is facing this criminal charge. Alright?

7         So, it doesn't have to be a lengthy call, but

8  basically an opportunity to give him a chance to let a family

9  member know that he is here, that he has been arrested, and

10 that he's facing this charge.

11        MR. LOMBA:   Your Honor, with this suffice? I

12 believe he has an individual that's known to him in Court.

13        THE COURT:   Well, I don't know. Sir, is that a

14 family member?

15        DEFENDANT:   *Sí, sí...* I said *sí.* Yes.

16        THE COURT:   Oh, alright. Well, maybe if you...

17 Marshals, then maybe either it can be here or it can be at the

18 cellblock, wherever you think that it's most practical.

19        But, if you could just give him a minute so that he

20 can talk to his family member, in case that he wants to make

21 any kind of arrangements for purposes of securing an attorney

22 or any matter that have to do with loose ends.

23        Just a minute so that he can talk with his family

24 member. Alright? Okay, and that will certainly then waive the

25 need to make the... allow the phone call. Alright? So, just

81

1  please give the Defendant a chance... give him a chance so

2  that he could talk to his family member.

3          Very well, you may withdraw. The Motion shall be

4  scanned and made part of the record.

5  (Whereupon, the hearing in the above-mention proceeding was

6  terminated.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

82

1                    TRANSCRIBER CERTIFICATION

2

3          I, CRYSTAL INCHAUSTEGUI BREAZ, Transcriber, do

4    hereby certify that the foregoing transcript was transcribed

5    by me to the best of my abilities.

6

7          I CERTIFY that all "(inaudible)", "(phonetic)", and

8    "(unintelligible)" were carefully reviewed and found to be as

9    written.

10

11         I FURTHER CERTIFY that I am not interested in the

12   outcome of the case mentioned in said caption.

13

14                     S/ CRYSTAL INCHAUSTEGUI

15                     CRYSTAL INCHAUSTEGUI BREAZ

16

17         I, DIANE BREAZ, RPR and Official Court Reporter for

18   the District Court of Puerto Rico, certify that the foregoing

19   transcript has been verified and certified by me.

20

21                     S/ DIANE BREAZ

22                     DIANE BREAZ

23

24

25

CERTIFIED TRANSCRIBERS, INC.
1075 Carr. 2 Cond. Plaza Suchville #302
Bayamón, Puerto Rico 00959
Tel. # (787) 783−6623; (787) 617−9487